**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**

|  |  |
|---|---|
| EXEGI PHARMA, LLC<br>90 Church Street<br>Rockville, Maryland 20850-4123 | \*<br><br>\*<br><br>\* |
|     Plaintiff | \* |
|         v. | \*      Case No. <u> 20CV00192 </u> |
|  | \* |
| BROOKFIELD PHARMACEUTICALS, LLC<br>15460 W. Capitol Drive<br>Suite 111<br>Brookfield, Wisconsin 53005-2632 | \*<br><br>\*<br><br>\* |
|     Defendant. | \* |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

Plaintiff ExeGi Pharma, LLC ("ExeGi"), by and through its undersigned counsel, as and for its Complaint against Defendant Brookfield Pharmaceuticals, LLC ("Brookfield"), alleges as follows:

## NATURE OF THE ACTION

1.     This case involves Brookfield, a start-up pharmaceutical company, improperly siphoning sales away from ExeGi, the exclusive seller of a long-established probiotic product—the De Simone Formulation—through a pattern of deceitful marketing.  Brookfield's deceitful marketing scheme was targeted to divert, and has diverted, customers from ExeGi to Brookfield by falsely equating Brookfield's new, untested product with ExeGi's well-known, established product and by falsely suggesting that the clinical studies supporting the efficacy of ExeGi's product support Brookfield's product as well.

2.    Brookfield, founded in 2017, recently introduced its "High Potency Probiotic" capsules in pharmacies across the country, touting it as a "generic" version of ExeGi's probiotic product "Visbiome."

3.    The reason Brookfield would attempt to attach its High Potency Probiotic to Visbiome is clear.  Visbiome is the brand name for a unique high-potency probiotic formulation of eight specific bacterial strains in precise proportions created by Professor Claudio De Simone ("Prof. De Simone") to manage numerous, persistent and often quite serious gastrointestinal diseases (the "De Simone Formulation").  The De Simone Formulation, controlled by ExeGi in the United States, is one of the most extensively studied probiotics on the market—having been the subject of more than 70 human clinical trials—and is widely considered the "gold standard" for such products.  Instead of touting its own product's value, whatever it may be, Brookfield has been presenting its High Potency Probiotic to distributors, retailers, and end consumers as an equivalent alternative to Visbiome, creating the materially false impression that High Potency Probiotic has the same or nearly identical efficacy, and directly and by implication, marketing the High Potency Probiotic as such. Further, it is clear that Brookfield is attempting to capitalize on the clinical studies performed on the De Simone Formulation to claim that its own product has been proven effective by clinical testing and should be classified as a medical food.  None of this is even remotely close to the truth—in fact, these product claims are literally false, as they materially misrepresent facts about the composition and efficacy of the High Potency Probiotic. Not only are these claims false, they are, and have been, highly damaging to ExeGi.[1]

---

[1] Brookfield's claims are also highly damaging, and potentially extremely dangerous, to many consumers who purchase the High Potency Probiotic believing it is a generic version of (and as efficacious as) Visbiome.

4.     Brookfield, however, wants to fast-track its High Potency Probiotic to commercial success.  So rather than doing what Prof. De Simone and ExeGi have done—create an incredibly effective product through tireless work and research and then organically build brand awareness and customer confidence—Brookfield has attempted a short cut.  Its claim to distributors, retailers and end consumers that it makes a formula that is interchangeable with ExeGi's product creates a false equivalence between its product and Visbiome, and siphons the sales, the goodwill, and the trust that Prof. De Simone and ExeGi have worked so hard to build.

5.     This is not the first time a competitor has attempted to profit by associating its product with the De Simone Formulation.  In 2018, Prof. De Simone and ExeGi concluded a jury trial in the United States District Court for the District of Maryland against the lead distributors of VSL#3—which, beginning June 1, 2016, attempted to palm off its own new product as the De Simone Formulation.  The jury in that case unanimously found that the distributors of VSL#3 were liable for false advertising by misrepresenting VSL#3 to be the same as the De Simone Formulation/Visbiome.  The jury awarded damages of $15 million on ExeGi's false advertising claim, which represented one of the distributors' wrongfully earned profits on the sales of VSL#3 from July 2016 through October 2018.  The jury's verdict was upheld by the federal district judge, who also entered a permanent injunction to prevent the distributors from making further misrepresentations that VSL#3 is equivalent to the De Simone Formulation or Visbiome.

6.     Now Brookfield is misrepresenting its product in much the same way, taking advantage of the good will and trust that Prof. De Simone and ExeGi have built in Visbiome, and harming ExeGi.  Based on these facts and the averments below, ExeGi seeks to hold Brookfield liable for false advertising and unfair competition under the Lanham Act, violation of the Wisconsin Code, common law unfair competition, and tortious interference with prospective

3

contractual relations.  For these causes of action, ExeGi requests compensatory damages against Brookfield to remedy the harms caused by its false advertising, as well as punitive damages and comprehensive injunctive relief.  ExeGi also asks that the Court order Brookfield to disgorge to ExeGi all profits that it has unjustly gained from its unlawful conduct.

## THE PARTIES

7.     Plaintiff ExeGi Pharma, LLC is a limited liability company organized under the laws of New York with its principal place of business at 90 Church Street, Rockville, Maryland 20850.  The Members of ExeGi are citizens of Maryland and Switzerland; ExeGi is therefore a citizen of Maryland and Switzerland.

8.     Defendant Brookfield Pharmaceuticals, LLC is a limited liability company organized under the laws of Wisconsin with its principal place of business at 15460 West Capitol Drive, Suite 111, Brookfield, Wisconsin 53005.  The Members of Brookfield are citizens of Wisconsin; Brookfield is therefore a citizen of Wisconsin.

## JURISDICTION AND VENUE

9.     The sole Plaintiff in this action is a citizen of Maryland and Switzerland, and the sole Defendant is a citizen of Wisconsin.  Accordingly, there is complete diversity between the parties to these claims.

10.     As alleged herein, the amount in controversy between the parties exceeds $75,000.00, exclusive of interest and costs.

11.     By virtue of the foregoing facts, this Court has jurisdiction over the subject matter of the claims brought by Plaintiff under 28 U.S.C. § 1332(a)(1).

12.     In addition, because this dispute concerns a federal question under Section 43(a) of the Lanham Act, this Court has jurisdiction under 28 U.S.C. § 1331.

4

13.     This Court also has jurisdiction over the subject matter of the claims brought by Plaintiff under 28 U.S.C. § 1367(a).

14.     This Court has personal jurisdiction over Brookfield pursuant to Wis. Stat § 801.05(1)(c) because Brookfield is a domestic limited liability company.

15.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1), as Brookfield is a resident of this judicial district.

## FACTUAL ALLEGATIONS

### A.  Prof. De Simone's Groundbreaking Work With Probiotics

16.     Prof. De Simone is a renowned scientist, inventor, physician, and leader in the field of medical research focused on the health benefits of certain "friendly" bacteria that live on and within the human body.  He is a Professor of Infectious Diseases and has degrees in Gastroenterology and Immunology, is a Fellow of the American Gastroenterology Association, and is an inventor of bacterial compositions used in the fields of human and veterinary nutrition and hygiene.  Prof. De Simone has authored hundreds of clinical studies and scholarly papers in the field of probiotics.[2]

17.     During the 1980s and 1990s, Prof. De Simone conducted extensive research into the clinical use of bacterial strains to manage the symptoms associated with various serious

---

[2] Probiotics are formulations comprised of living microorganisms, most often live bacterial cultures, which may be similar to those normally present in the human gastrointestinal tract and which have a beneficial effect on the host.  Probiotics are supplied commercially in a variety of forms, including capsules, tablets and sachets containing a powder dosage form, as well as in some foods, such as yogurt.  The consumption of probiotics can help to re-establish a healthy balance of bacteria in the intestine by replenishing beneficial bacterial strains.  Indeed, probiotics are now understood as integral to an extensive number of essential metabolic processes, which has shown the validity of the medical use of probiotics.  However, research has clearly shown that not all probiotics are suited for, or are safe with, diseased states; assessing the suitability and safety of using a certain probiotic for a given medical condition thus requires randomized, controlled or equivalent human trials.

5

gastrointestinal disorders, such as Inflammatory Bowel Disease ("IBD"), Ulcerative Colitis ("UC"), Pouchitis and Irritable Bowel Syndrome ("IBS"). Prof. De Simone's work resulted in his inventing the De Simone Formulation, which clinical experience and extensive trials have demonstrated has beneficial effects on those suffering from these maladies.

**B. VSL Inc. Commercializes the De Simone Formulation**

18.     Nearly two decades ago, Prof. De Simone and two brothers, Claudio and Paolo Cavazza, formed VSL Pharmaceuticals, Inc. ("VSL Inc."), and Prof. De Simone served for a time as its CEO and as a member of its board. Beginning in 2002, after Prof. De Simone decided to license (temporarily) the right to use his patent covering the De Simone Formulation to VSL Inc., the De Simone Formulation was commercially launched in the United States under the trademark "VSL#3."

19.     In the ensuing years, VSL Inc. sold VSL#3 with great success. Dozens of human clinical trials of the De Simone Formulation were completed successfully, and the results of these studies were published in peer-reviewed medical and scientific journals. Such trials demonstrated the safety and efficacy of the De Simone Formulation in the dietary management of, *inter alia*, IBD (inflammatory bowel diseases), IBS (irritable bowel syndrome), and Pouchitis, a very serious and rare chronic disorder. With respect to Pouchitis, the De Simone Formulation was ultimately recognized by the world's professional gastroenterology societies as a "standard of care"—an achievement that no other probiotic had attained previously.

20.     Despite this success, eventually, members of the Cavazza family sought to increase profits even further by changing the product's composition and substituting in cheaper bacterial strains without informing customers. Prof. De Simone rejected this idea, recognizing that if VSL Inc. changed VSL#3 from the De Simone Formulation to a different probiotic mix, then the product

6

would no longer be supported by the voluminous clinical trials confirming the De Simone Formulation's efficacy. Instead, VSL Inc. would be selling an untested, unproven product to unsuspecting consumers who had come to depend upon his De Simone Formulation to manage serious medical conditions. Prof. De Simone's refusal to be complicit in the Cavazzas' greedy scheme ignited a long conflict between Prof. De Simone and the Cavazzas; the more Prof. De Simone resisted this unethical, dangerous change, the more the Cavazzas attempted to make it a reality by force.

21. Due to this pressure, Prof. De Simone resigned from VSL Inc. in November of 2014 and took with him the "Know-How" that was necessary to manufacture his De Simone Formulation. A short time later, he exclusively licensed the right to sell and market the De Simone Formula to ExeGi. ExeGi began selling the De Simone Formulation under the trademark "Visbiome" in February 2016. VSL Inc., meanwhile, created a new product—a poor imitation of the De Simone Formula that contained only seven strains (the "Fake Formula")—and, in June 2016, began selling it under the same "VSL#3" trademark without informing the public that the formula had changed. During this time, the Cavazzas also entered into an agreement with another pharmaceutical company, Alfa Wassermann, through which they merged their own company, Sigma-Tau Group, with Alfa Wasserman to create a new company, Alfasigma USA, Inc. ("Alfasigma"), to peddle their Fake Formula.

22. De Simone filed suit in the United States District Court for the District of Maryland ("Maryland District Court Action"), bringing various claims against VSL Inc., including a claim for a declaratory judgment that he owned the Know-How. When ExeGi learned that Leadiant Biosciences, Inc. ("Leadiant"), another licensee of VSL Inc., and Alfasigma were selling the seven-strain Fake Formula and marketing it as "the same" as, and equally efficacious to, the De

7

Simone Formulation, ExeGi joined the Maryland District Court Action and brought claims against Leadiant and Alfasigma for false advertising under the Lanham Act.

23.    The District Court granted summary judgment for Prof. De Simone on the issue of Know-How, ruling Prof. De Simone owned it.  Then, in November of 2018, after a three-week trial, the jury reached a unanimous verdict in favor of Prof. De Simone and ExeGi and against VSL, Inc., Alfasigma, and Leadiant.  The jury awarded Prof. De Simone and ExeGi $18,014,041 in damages, including $15,000,000 to ExeGi for their false advertising claim.

C.   **Brookfield Markets Knock-Off Product as Generic Version of Visbiome**

24.    According to its web site, Brookfield was founded in 2017 "by a group of pharmaceutical executives with extensive experience in generic, OTC & branded products."

25.    Brookfield makes no secret of the fact that its business plan is to create knock-off products.  Its website also states that Brookfield is "focused on identifying, developing and marketing generic pharmaceutical products."

26.    One such product is Brookfield's High Potency Probiotic.  Brookfield has strategically and pervasively represented that High Potency Probiotic is a generic alternative to, sufficient substitute for, and therapeutically equivalent to Visbiome.  In so doing, Brookfield has convinced distributors, like McKesson and, upon information and belief, AmerisourceBergen, to strategically link High Potency Probiotic to Visbiome in their databases as a generic, equivalent alternative.

27.    As a result of this intentional scheme by Brookfield, when a pharmacy searches for "Visbiome" in McKesson's "McKesson Connect" pharmacy purchasing system, the results of the search do not include Visbiome, but, instead, "High Potency Probiotic" is listed as a "Generic

8

Equivalent." Sales of Visbiome that would have gone to ExeGi are thus diverted directly to Brookfield; ExeGi has lost many thousands of sales to Brookfield in precisely this manner.

28. Brookfield's High Potency Probiotic is not, however, a generic equivalent to Visbiome. Not even close. It is no more "similar" to Visbiome than Pepsi is similar to Jack Daniel's because both are liquids, or apples are similar to bananas because both are fruits.

29. As a preliminary matter, just as the Fake Formula is made with one less strain than Visbiome, High Potency Probiotic is also off by one strain; it contains nine strains of bacteria, while Visbiome contains eight. For probiotics, each strain is essentially an active ingredient; thus, the fact that High Potency Probiotic has a different number of strains than Visbiome conclusively determines that the former cannot be the generic equivalent of the latter.

30. Furthermore, the strains used in the two products are genetically different. Indeed, Brookfield's own Director of Medical Affairs, Lucrezia Hinman, confirmed to ExeGi that "[t]he specific strains of bacteria [in Brookfield's High Potency Probiotic] are not identical" to those in Visbiome. This too conclusively confirms that High Potency Probiotic is not the generic equivalent of Visbiome.

31. As part of its scheme to promote its product as the generic equivalent nonetheless, Brookfield lists only the genus and species of the strains in its product in its package insert, while refraining from fully identifying the precise strains present in the product using a strain alphanumeric code (*e.g.*, ATCC 2454 or ATCC 2899). The genus and species of some of the strains in the High Potency Probiotic (according to its package insert) are the same genus and species as certain strains used in Visbiome, implying some level of sameness. However, any suggestion that the strains in the two products are identical, or even are closely related, is false. Individual strains of the same genus and species can have vastly different functional properties. A

9

proper analogy is that of dogs; all dogs are the same genus and species—*canis familiaris*—and the strain alphanumeric code is akin to identifying an individual dog. Just as a mastiff and a chihuahua are the same genus and species, bacterial strains in the same genus and species can, and do, vary wildly. Notably, even isolates of the same strain can have different functional properties according to where they are formulated under different manufacturing conditions. So, while listing only the genus and species of strains gives the appearance of a product closely related to Visbiome, in reality, the strains found in High Potency Probiotic are vastly and fundamentally different, with different functional properties, than the strains found in Visbiome.

32.     As a result of the fact that the two products are comprised of entirely distinct strains of bacteria, unsurprisingly, the final products also have entirely different biochemical and immunological profiles. The products thus also have different functionalities in the body, as the particular biochemical and immunological profile is the key to achieving effective results in the management of certain medical conditions. Again, calling High Potency Probiotic the generic equivalent of Visbiome is blatantly false; the two products are genetically, biologically, immunologically, and functionally different.

33.     The biochemical and immunological profile of the De Simone Formulation has been repeatedly proven to work in human clinical trials. There are no randomized, controlled or equivalent human clinical studies that even assess the efficacy of the biochemical and immunological profile of High Potency Probiotic for IBS, IBD, Pouchitis, or any other condition effectively managed by Visbiome, much less a study that confirms its efficacy.

34.     Upon information and belief, Brookfield performed no tests or studies at all, much less the appropriate randomized, controlled or equivalent human studies, to determine if its product was functionally equivalent to Visbiome, nor did it spend the time and resources necessary to

10

determine whether its product was effective at all. On its product insert, High Potency Probiotic lists four "references," but none has anything to do with High Potency Probiotic specifically. The first "reference" is to a Code of Federal Regulations section that relates to labeling requirements, and the other three are articles that discuss—generally—intestinal diseases and probiotics but contain no mention of High Potency Probiotic.

35.     On the other hand, the De Simone Formulation (Visbiome) has been the subject of more than 70 successful clinical studies, each confirming the effectiveness of Visbiome. Brookfield's promotion of High Potency Probiotic as a generic equivalent of Visbiome is particularly pernicious, as many consumers seeking to buy Visbiome are immunocompromised and highly susceptible to additional medical problems if they do not receive the proper medical food that is proven to effectively manage their conditions: the De Simone Formulation. For example, there are numerous patients with IBD or IBS-like symptoms who are required to use immunosuppressive agents and/or steroids and need the De Simone Formulation. Fragile patients such as these should be properly advised by the manufacturer through health warnings issued on its product labeling that the product IS NOT the generic equivalent of Visbiome and IS NOT proven to effectively manage any medical conditions whatsoever.

36.     Brookfield has further misrepresented the quality and characteristics of its High Potency Probiotic in its packaging by baldly claiming that the product is "[a] medical food for the dietary management of dysbiosis associated with gastrointestinal conditions such as irritable bowel syndrome and ulcerative colitis."

37.     The term "medical food" has a statutory definition and use of that term necessarily implies the associated product has met certain criteria. The definition is set out at 21 U.S.C. 360ee(b)(3) as "a food which is formulated to be consumed or administered enterally under the

supervision of a physician and which is intended for the specific dietary management of a disease or condition for which distinctive nutritional requirements, based on recognized scientific principles, are established by medical evaluation."

38.     According to its Frequently Asked Questions About Medical Foods; Second Edition Guidance for Industry ("Medical Foods FAQ"), the Food and Drug Administration ("FDA") "considers the statutory definition of medical foods to narrowly constrain the types of products that fit within this category of food."  Medical Foods FAQ, p. 4.  And the FDA has established criteria to clarify this statutory definition.  Found at 21 CFR 101.9(j)(8), the criteria are as follows:

> (i) It is a specially formulated and processed product (as opposed to a naturally occurring foodstuff used in its natural state) for the partial or exclusive feeding of a patient by means of oral intake or enteral feeding by tube;

> (ii) It is intended for the dietary management of a patient who, because of therapeutic or chronic medical needs, has limited or impaired capacity to ingest, digest, absorb, or metabolize ordinary foodstuffs or certain nutrients, or who has other special medically determined nutrient requirements, the dietary management of which cannot be achieved by the modification of the normal diet alone;

> (iii) It provides nutritional support specifically modified for the management of the unique nutrient needs that result from the specific disease or condition, as determined by medical evaluation;

> (iv) It is intended to be used under medical supervision; and

> (v) It is intended only for a patient receiving active and ongoing medical supervision wherein the patient requires medical care on a recurring basis for, among other things, instructions on the use of the medical food.

39.     Brookfield, in making the claim that High Potency Probiotic is a "medical food," merely recites, on the product's packaging, buzz words from the above statutory definition.

40.     Yet while Brookfield claims High Potency Probiotic is a "medical food," such claim necessarily means that medical evaluations have determined it provides specifically

12

modified nutritional support to manage the unique nutritional needs that result from certain conditions.

41.     Brookfield, however, has no medical evaluations with which to support the claim that High Potency Probiotic provides specifically modified nutritional support to manage the unique nutrient needs resulting from IBS or Ulcerative Colitis.  Indeed, Brookfield's Director of Medical Affairs confirmed that "[n]o peer reviewed clinical trials have been conducted for IBS or Ulcerative Colitis with [High Potency Probiotic's] specific strains."  Thus, Brookfield's use of the term "medical food" in advertising for High Potency Probiotic, including the product's package, is literally false or, at best, grossly and intentionally misleading.

42.     Once again, Brookfield's use of the term "medical food" is intended to imply a false equivalency between High Potency Probiotic and Visbiome.  Visbiome is a real medical food and is advertised as such.  Brookfield's use of the term is both false in and of itself and is part of the larger scheme to usurp Visbiome customers through promotion of the idea that the products are equivalent and therefore "as good as" one another and that the extensive research and studies validating Visbiome also apply to High Potency Probiotic.

43.     Brookfield's plan to usurp ExeGi's customers and potential customers through dissemination of false claims about High Potency Probiotic is working.  Shortly after the jury verdict finding the distributors of VSL#3 liable for false advertising in the Maryland District Court Action, Costco, which is one of the major retail pharmacies throughout the United States, and McKesson, one of the three major medical product suppliers in the country, decided to stop selling VSL#3.  ExeGi immediately began receiving numerous inquiries from pharmacists and others at Costco requesting that ExeGi begin selling Visbiome to Costco for its sale to end consumers.  And ExeGi was working on doing just that; McKesson is the primary medical product supplier for

Costco, and ExeGi was in advanced talks with McKesson to sell Visbiome on the McKesson platform including, but not limited to, sales to Costco.

44.     However, Brookfield stepped in and prevented the consummation of this extremely lucrative opportunity for ExeGi.  Brookfield was able to do so in only one way: misrepresenting its product as a medical food that is the generic, cheaper equivalent of Visbiome.  As a result of, and relying on, these misrepresentations, in early 2019, McKesson decided to buy (and make available for purchase to the companies it supplies, including Costco) only the High Potency Probiotic and not Visbiome.  This decision, directly caused by Brookfield's campaign of misrepresentations, has resulted in tens of thousands of lost sales by ExeGi and many millions of dollars in damages.

**COUNT I**
**(<u>False Advertising Under 15 U.S.C. § 1125(a)</u>)**

45.     ExeGi adopts by reference each and every one of the foregoing factual allegations as if alleged in full in Count I, except as they may be inconsistent with the specific allegations contained in Count I.

46.     As alleged herein, Brookfield has made, and continues to make, material false representations and misleading statements of fact about its High Potency Probiotic in commercial advertisements in violation of 15 U.S.C. § 1125(a).

47.     As described in part above, Brookfield has a widespread marketing campaign to convince distributors, retailers, medical professionals, and consumers that Brookfield's High Potency Probiotic is a generic equivalent to, and suitable substitute for, Visbiome.

48.     Such statements are literally false—as High Potency Probiotic is not and cannot be equivalent to, or a suitable substitute for, Visbiome—or, at the very least, deceptive.

14

49. High Potency Probiotic contains nine strains of bacteria, while Visbiome contains eight. As each strain of bacteria is essentially an active ingredient in a probiotic, this conclusively establishes that High Potency Probiotic is not the generic equivalent of Visbiome.

50. Furthermore, Brookfield's own Director of Medical Affairs has confirmed that the specific strains of bacteria in High Potency Probiotic are not identical to those comprising Visbiome. As strains of bacteria have vastly different functional properties, this too assures that High Potency Probiotic is not the generic equivalent of Visbiome.

51. As a result of the fact that the two products are comprised of a different number of strains and that the strains are genetically different, the final products also have entirely different biochemical and immunological profiles. High Potency Probiotic and Visbiome thus also have different functionality in the body, as the particular biochemical and immunological profile is the key to achieving effective results in the management of certain medical conditions. For this reason too, calling High Potency Probiotic the generic equivalent of Visbiome is blatantly false. In sum, the two products are genetically, biologically, immunologically, and functionally different.

52. More than 70 human clinical trials have been conducted on the De Simone Formulation that comprises Visbiome, each confirming its efficacy and safety. There has not been a single human clinical trial performed on High Potency Probiotic, much less one that confirms its efficacy and safety. Upon information and belief, High Potency Probiotic is different and produces different results compared to Visbiome

53. Brookfield has not committed the time or resources to conduct tests—or commission tests—to determine if its product would be equivalent to Visbiome or would be as effective as Visbiome in subjects with IBD, IBS or Pouchitis.

15

54. Brookfield also has made the false statement of fact that its High Potency Probiotic is "a specially formulated medical food for the dietary management of dysbiosis associated with gastrointestinal conditions such as irritable bowel syndrome and ulcerative colitis."

55. Such claim is literally false. Stating that a product is a "medical food" necessarily means that medical evaluations have determined it provides specifically modified nutritional support to manage the unique nutritional needs that result from certain conditions. Here, no medical evaluations have determined High Potency Probiotic provides specifically modified nutritional support to manage the unique nutrient needs resulting from IBS or Ulcerative Colitis. Indeed, Brookfield's Director of Medical Affairs confirmed that "[n]o peer reviewed clinical trials have been conducted for IBS or Ulcerative Colitis with [High Potency Probiotic's] specific strains." Brookfield, upon information and belief, has implied that the studies conducted on Visbiome apply to its High Potency Probiotic. Stating that the product is a "medical food" is misleading and dangerous for fragile patients who are consuming High Potency Probiotic believing incorrectly that it has clinically-proven effectiveness.

56. In making false and misleading statements of fact to distributors and retailers, Brookfield has promoted High Potency Probiotic as equivalent to Visbiome, which it quite clearly is not.

57. Brookfield's false and misleading statements of fact are material, as distributors, retailers, physicians, and end-user purchasers believe they are purchasing, recommending, or prescribing a product that is the generic equivalent of—and equally efficacious and safe to—the De Simone Formulation, which has been the subject of more than 70 clinical trials and a lengthy patient history when, in reality, the product they are purchasing is fundamentally different, made

16

with genetically different bacterial strains, distinct immunologically and biochemically, and with no testing history for efficacy and safety in patients.

58.    Brookfield's false and misleading statements have actually deceived a substantial segment of customers and potential customers, as distributors and retailers have linked Brookfield's High Potency Probiotic to Visbiome as a generic equivalent in their drug dispensing databases and price systems.  Such systems represent a major drug marketing communications channel to pharmacists and chain store buyers, and pharmacists use them to determine what products to dispense for customers.

59.    Specifically, based upon such representations by Brookfield representatives to McKesson, Brookfield's High Potency Probiotic has been listed within the "McKesson Connect" pharmacy purchasing system as a "Generic Equivalent" to Visbiome.

60.    The linking of Brookfield's High Potency Probiotic to Visbiome in drug dispensing databases and price systems could not have happened without representatives of Brookfield successfully creating the false impression to distributors and retailers that High Potency Probiotic is generic to and suitably substitutable for Visbiome.

61.    Listing High Potency Probiotic as a generic equivalent to Visbiome also deceives, misleads, and confuses physicians and end-user customers, as they are likely to believe that High Potency Probiotic will provide the same safety and results as Visbiome.  Such deception has, and is likely to continue to, influence customers' purchasing decisions regarding these products, which are in interstate commerce.  Some end-user purchasers have been confused enough to believe that High Potency Probiotic is the same formula as Visbiome.

62. Physicians and consumers reviewed and relied upon the false and misleading representations in Brookfield's High Potency Probiotic advertising in making the decision to prescribe or buy High Potency Probiotic rather than Visbiome

63. ExeGi has expended significant capital and made extensive efforts to market Visbiome and to build its brand. By linking High Potency Probiotic to Visbiome and marketing it as an equivalent and suitable alternative, Brookfield has damaged ExeGi, as distributors, retailers, and other consumers, such as end-user buyers, have been led to believe the products are the same. Such has eroded Visbiome's goodwill and diverted sales from Visbiome (the only product on the market that contains the De Simone Formulation) to High Potency Probiotic.

WHEREFORE, Plaintiff ExeGi Pharma, LLC demands judgment against Defendant Brookfield Pharmaceuticals, LLC, awarding Plaintiff all available remedies including: (1) compensatory damages in an amount to be proven at trial but in no event less than $5,000,000; (2) disgorgement of Brookfield's profits in an amount to be proven at trial but in no event less than $5,000,000; (3) a permanent injunction prohibiting Brookfield from making false statements regarding High Potency Probiotic or Visbiome; (4) attorneys' fees and costs; (5) prejudgment and post-judgment interest; (6) enhanced or trebled damages; and (7) such other, further, and general relief as the Court deems just and proper.

## COUNT II
### (Unfair Competition Under 15 U.S.C. § 1125(a))

64. ExeGi adopts by reference each and every one of the foregoing factual allegations as if alleged in full in Count II, except as they may be inconsistent with the specific allegations contained in Count II.

65.     As alleged herein, Brookfield has made, and continues to make, material false representations and misleading statements of fact about its High Potency Probiotic in commercial advertisements, which constitutes unfair competition in violation of 15 U.S.C. § 1125(a).

66.     As described above, Brookfield has claimed to distributors and retailers, such as McKesson and, upon information and belief, AmerisourceBergen, that Brookfield's High Potency Probiotic is a generic equivalent to, and suitable substitute for, Visbiome.

67.     Such statements are literally false—as High Potency Probiotic is not and cannot be equivalent to, or a suitable substitute for, Visbiome—or, at the very least, deceptive.

68.     High Potency Probiotic contains nine strains of bacteria, while Visbiome contains eight.  As each strain of bacteria is essentially an active ingredient in a probiotic, this conclusively establishes that High Potency Probiotic is not the generic equivalent of Visbiome.

69.     Furthermore, Brookfield's own Director of Medical Affairs has confirmed that the specific strains of bacteria in High Potency Probiotic are not identical to those comprising Visbiome.  As strains of bacteria have vastly different functional properties, this too assures that High Potency Probiotic is not the generic equivalent of Visbiome.

70.     Because the two products are comprised of a different number of strains and that the strains are genetically different, mixed in different proportions, the final products also have entirely different biochemical and immunological profiles.  High Potency Probiotic and Visbiome thus also have different functionality in the body, as the particular biochemical and immunological profile is the key to achieving effective results in the management of certain medical conditions. For this reason too, calling High Potency Probiotic the generic equivalent of Visbiome is blatantly false.  In sum, the two products are genetically, biologically, immunologically, and functionally different.

19

71.     Additionally, upon information and belief, High Potency Probiotic produces materially inferior or different results compared to Visbiome.  More than 70 human clinical trials have been conducted on the De Simone Formulation that comprises Visbiome, each confirming its efficacy and safety.  There has not been a single human clinical trial performed on High Potency Probiotic, much less one that confirms its efficacy and safety.

72.     Brookfield has not committed the time or resources to conduct tests—or commission tests—to determine if its product would be equivalent to Visbiome or would be as effective and safe as Visbiome.

73.     Brookfield also has made the false statement of fact that its High Potency Probiotic is "a specially formulated medical food for the dietary management of dysbiosis associated with gastrointestinal conditions such as irritable bowel syndrome and ulcerative colitis."

74.     Such claim is literally false.  Stating that a product is a "medical food" necessarily means that medical evaluations have determined it provides specifically modified nutritional support to manage the unique nutritional needs that result from certain conditions.  Here, no medical evaluations have determined High Potency Probiotic provides specifically modified nutritional support to manage the unique nutrient needs resulting from IBS or Ulcerative Colitis. Indeed, Brookfield's Director of Medical Affairs confirmed that "[n]o peer reviewed clinical trials have been conducted for IBS or Ulcerative Colitis with [High Potency Probiotic's] specific strains."  Brookfield, upon information and belief, has merely implied that the studies conducted on Visbiome apply to its High Potency Probiotic.

75.     In making false and misleading statements of fact to distributors and retailers, Brookfield has promoted High Potency Probiotic as equivalent to Visbiome, which it quite clearly is not.

76. Brookfield's false and misleading statements of fact are material, as distributors, retailers, physicians, and end-user purchasers believe they are purchasing, recommending, or prescribing a product that is the generic equivalent of—and equally efficacious and safe to—the De Simone Formulation, which has been the subject of more than 70 clinical trials and a lengthy patient history when, in reality, the product they are purchasing is fundamentally different, with a different source and different effects, with no testing history, and little or no patient history.

77. Brookfield's false and misleading statements have actually deceived a substantial segment of customers and potential customers, as distributors and retailers have linked Brookfield's High Potency Probiotic to Visbiome as a generic equivalent in their drug dispensing databases and price systems. Such systems represent a major drug marketing communications channel to pharmacists and chain store buyers, and pharmacists use them to determine what products to dispense for customers.

78. Specifically, based upon such representations by Brookfield representatives to McKesson, Brookfield's High Potency Probiotic has been listed within the "McKesson Connect" pharmacy purchasing system as a "Generic Equivalent" to Visbiome.

79. The linking of Brookfield's High Potency Probiotic to Visbiome in drug dispensing databases and price systems could not have happened without representatives of Brookfield successfully creating the false impression to distributors and retailers that High Potency Probiotic is generic to and suitably substitutable for Visbiome.

80. Listing High Potency Probiotic as a generic equivalent to Visbiome also deceives, misleads, and confuses physicians and end-user customers, as they are likely to believe that High Potency Probiotic will provide the same results as Visbiome. Such deception is likely to influence customers' purchasing decisions regarding these products, which are in interstate commerce.

21

Some end-user purchasers have been confused enough to believe that High Potency Probiotic is the same formula as Visbiome.

81.     Physicians and consumers reviewed and relied upon the false and misleading representations in Brookfield's High Potency Probiotic advertising in making the decision to prescribe or buy High Potency Probiotic rather than Visbiome.

82.     Brookfield's wrongful acts alleged herein have caused it to earn, and will continue to cause it to earn, substantial revenues and profits based upon the false representation that High Potency Probiotic is a generic equivalent of Visbiome and the other false representations alleged herein.

83.     ExeGi has expended significant capital and made extensive efforts to market Visbiome and to build its brand. The company is currently partnered with a number of academic institutions (*e.g.*, University of Wisconsin, Columbia University, the Medical College of Wisconsin, and University of Pittsburgh) to support ten human clinical trials in a variety of serious conditions, including multiple sclerosis, HIV, diabetes, and autism.  Brookfield is taking advantage of ExeGi's efforts without spending a penny.  By linking High Potency Probiotic to Visbiome and marketing it as an equivalent and suitable alternative, Brookfield has sought to free ride off of ExeGi's scientific development efforts and otherwise damaged ExeGi, as distributors, retailers, physicians and other consumers, such as end-user buyers, have been led to believe the products are the same.  Such has eroded Visbiome's goodwill and diverted sales from Visbiome (the only product on the market that contains the De Simone Formulation) to High Potency Probiotic, which has deprived ExeGi of resources to develop the science associated with Visbiome.

WHEREFORE, Plaintiff ExeGi Pharma, LLC demands judgment against Defendant Brookfield Pharmaceuticals, LLC, awarding Plaintiff all available remedies including: (1)

compensatory damages in an amount to be proven at trial but in no event less than $5,000,000; (2) disgorgement of Brookfield's profits in an amount to be proven at trial but in no event less than $5,000,000; (3) a permanent injunction prohibiting Brookfield from making false statements regarding High Potency Probiotic or Visbiome; (4) attorneys' fees and costs; (5) prejudgment and post-judgment interest; (6) enhanced or trebled damages; and (7) such other, further, and general relief as the Court deems just and proper.

**COUNT III**
**(<u>Common Law Unfair Competition</u>)**

84.     ExeGi adopts by reference each and every one of the foregoing factual allegations as if alleged in full in Count III, except as they may be inconsistent with the specific allegations contained in Count III.

85.     As alleged herein, Brookfield has made, and continues to make, material false representations and misleading statements of fact about its High Potency Probiotic in commercial advertisements, and has engaged in deceptive marketing, which constitutes unfair competition.

86.     As described above, Brookfield has claimed to distributors and retailers, such as McKesson and, upon information and belief, AmerisourceBergen, that Brookfield's High Potency Probiotic is a generic equivalent to, and suitable substitute for, Visbiome.

87.     Such statements are literally false—as High Potency Probiotic is not and cannot be equivalent to, or a suitable substitute for, Visbiome—or, at the very least, deceptive.

88.     High Potency Probiotic contains nine strains of bacteria, while Visbiome contains eight.  As each strain of bacteria is essentially an active ingredient in a probiotic, this conclusively establishes that High Potency Probiotic is not the generic equivalent of Visbiome.

89.     Furthermore, Brookfield's own Director of Medical Affairs has confirmed that the specific strains of bacteria in High Potency Probiotic are not identical to those comprising

23

Visbiome.  As strains of bacteria have vastly different functional properties, this too assures that High Potency Probiotic is not the generic equivalent of Visbiome.

90.     As a result of the fact that the two products are comprised of a different number of strains and that the strains are genetically different, the final products also have entirely different biochemical and immunological profiles.  High Potency Probiotic and Visbiome thus also have different functionality in the body, as the particular biochemical and immunological profile is the key to achieving effective results in the management of certain medical conditions.  For this reason too, calling High Potency Probiotic the generic equivalent of Visbiome is blatantly false.  In sum, the two products are genetically, biologically, immunologically, and functionally different.

91.     Additionally, upon information and belief, High Potency Probiotic produces materially different or inferior results compared to Visbiome.  More than 70 human clinical trials have been conducted on the De Simone Formulation that comprises Visbiome, each confirming its efficacy and safety.  There has not been a single human clinical trial performed on High Potency Probiotic, much less one that confirms its efficacy and safety.

92.     Brookfield has not committed the time or resources to conduct tests—or commission tests—to determine if its product would be equivalent to Visbiome or would be as effective as Visbiome.

93.     Brookfield also has made the false statement of fact that its High Potency Probiotic is "a specially formulated medical food for the dietary management of dysbiosis associated with gastrointestinal conditions such as irritable bowel syndrome and ulcerative colitis."

94.     Such claim is literally false.  Stating that a product is a "medical food" necessarily means that medical evaluations have determined it provides specifically modified nutritional support to manage the unique nutritional needs that result from certain conditions.  Here, no

medical evaluations have determined High Potency Probiotic provides specifically modified nutritional support to manage the unique nutrient needs resulting from IBS or Ulcerative Colitis. Indeed, Brookfield's Director of Medical Affairs confirmed that "[n]o peer reviewed clinical trials have been conducted for IBS or Ulcerative Colitis with [High Potency Probiotic's] specific strains." Brookfield, upon information and belief, has merely implied that the studies conducted on Visbiome apply to its High Potency Probiotic.

95. In making false and misleading statements of fact to distributors and retailers, Brookfield has promoted High Potency Probiotic as equivalent to Visbiome, which it quite clearly is not. Such has created confusion in the marketplace.

96. Brookfield's false and misleading statements of fact are material, as distributors, retailers, physicians, and end-user purchasers believe they are purchasing, recommending, or prescribing a product that is the generic equivalent of—and equally efficacious to—the De Simone Formulation, which has been the subject of more than 70 clinical trials and a lengthy patient history when, in reality, the product they are purchasing is fundamentally different, with a different source and different effects and safety, with no testing history, and little or no patient history.

97. Brookfield's false and misleading statements have actually deceived a substantial segment of customers and potential customers, as distributors and retailers have linked Brookfield's High Potency Probiotic to Visbiome as a generic equivalent in their drug dispensing databases and price systems. Such systems represent a major drug marketing communications channel to pharmacists and chain store buyers, and pharmacists use them to determine what products to dispense for customers.

98. Specifically, based upon such representations by Brookfield representatives to McKesson, Brookfield's High Potency Probiotic has been listed within the "McKesson Connect" pharmacy purchasing system as a "Generic Equivalent" to Visbiome.

99. The linking of Brookfield's High Potency Probiotic to Visbiome in drug dispensing databases and price systems could not have happened without representatives of Brookfield successfully creating the false impression to distributors and retailers that High Potency Probiotic is generic to and suitably substitutable for Visbiome.

100. Listing High Potency Probiotic as a generic equivalent to Visbiome also deceives, misleads, and confuses physicians and end-user customers, as they are likely to believe that High Potency Probiotic will provide the same results as Visbiome. Such deception is likely to influence customers' purchasing decisions regarding these products, which are in interstate commerce. Some end-user purchasers have been confused enough to believe that High Potency Probiotic is the same formula as Visbiome.

101. Physicians and consumers reviewed and relied upon the false and misleading representations in Brookfield's High Potency Probiotic advertising in making the decision to prescribe or buy High Potency Probiotic rather than Visbiome.

102. Brookfield's wrongful acts alleged herein have caused it to earn, and will continue to cause it to earn, substantial revenues and profits based upon the false representation that High Potency Probiotic is a generic equivalent of Visbiome and the other false representations alleged herein.

103. ExeGi has expended significant capital and made extensive efforts to market Visbiome and to build its brand. By linking High Potency Probiotic to Visbiome and marketing it as an equivalent and suitable alternative, Brookfield has damaged ExeGi, as distributors, retailers,

26

physicians and other consumers, such as end-user buyers, have been led to believe the products are the same. Such has eroded Visbiome's goodwill and diverted sales from Visbiome (the only product on the market that contains the De Simone Formulation) to High Potency Probiotic.

WHEREFORE, Plaintiff ExeGi Pharma, LLC demands judgment against Defendant Brookfield Pharmaceuticals, LLC, awarding Plaintiff all available remedies including: (1) compensatory damages in an amount to be proven at trial but in no event less than $5,000,000; (2) disgorgement of Brookfield's profits in an amount to be proven at trial but in no event less than $5,000,000; (3) punitive damages in an amount to be determined at trial but in no event less than $5,000,000; (4) a permanent injunction prohibiting Brookfield from making false statements regarding High Potency Probiotic or Visbiome; (5) attorneys' fees and costs; (6) prejudgment and post-judgment interest; and (7) such other, further, and general relief as the Court deems just and proper.

## COUNT IV
### (Violation of Wisconsin Stat. § 100.18)

104. ExeGi adopts by reference each and every one of the foregoing factual allegations as if alleged in full in Count IV, except as they may be inconsistent with the specific allegations contained in Count IV.

105. As alleged herein, Brookfield has directly and indirectly made, published, disseminated and circulated false, deceptive and misleading statements, representations and advertisements concerning its High Potency Probiotic with the intent of selling, distributing, and increasing the consumption of and interest in High Potency Probiotic in violation of Wisc. Stat. § 100.18.

106. Pursuant to Wis. Stat. § 100.18,

> [n]o person, firm, corporation or association, or agent or employee thereof, with intent to sell, distribute, increase the consumption of or in any wise dispose of ,,, anything offered by such person, firm, corporation or association, or agent or employee thereof, directly or indirectly, to the public for sale, hire, use or other distribution, … shall make, publish, disseminate, circulate, or place before the public, or cause, directly or indirectly, to be made, published, disseminated, circulated, or placed before the public, in this state, in a newspaper, magazine or other publication, or in the form of a book, notice, handbill, poster, bill, circular, pamphlet, letter, sign, placard, card, label, or over any radio or television station, or in any other way similar or dissimilar to the foregoing, an advertisement, announcement, statement or representation of any kind to the public relating to such purchase, sale, hire, use or lease of such real estate, merchandise, securities, service or employment or to the terms or conditions thereof, which advertisement, announcement, statement or representation contains any assertion, representation or statement of fact which is untrue, deceptive or misleading.

107.    Specifically, Brookfield has advertised its High Potency Probiotic to retailers and distributors as a generic equivalent to, or a suitable substitute for, Visbiome.

108.    Such claims, as described above, are false, as the products are not equivalent in composition or efficacy.

109.    Furthermore, Brookfield has advertised its High Potency Probiotic as "a specially formulated medical food for the dietary management of dysbiosis associated with gastrointestinal conditions such as irritable bowel syndrome and ulcerative colitis."  Stating that a product is a "medical food" necessarily means that medical evaluations have determined it provides specifically modified nutritional support to manage the unique nutritional needs that result from certain conditions.  Here, no medical evaluations have determined High Potency Probiotic provides specifically modified nutritional support to manage the unique nutrient needs resulting from IBS or Ulcerative Colitis.  Indeed, Brookfield's Director of Medical Affairs confirmed that "[n]o peer reviewed clinical trials have been conducted for IBS or Ulcerative Colitis with [High Potency Probiotic's] specific strains."

110.    Advertising High Potency Probiotic as a generic equivalent to Visbiome deceives, misleads, and confuses distributors, retailers, physicians, and end-user customers, as they have believed, and are likely to continue to believe, that High Potency Probiotic will provide the same results as Visbiome.  Such deception has, and is likely to continue to, influence customers' purchasing decisions regarding these products.

111.    ExeGi has expended significant capital and made extensive efforts to market Visbiome and to build its brand.  By advertising High Potency Probiotic as a generic equivalent to Visbiome and a "medical food," Brookfield has diverted sales from Visbiome to High Potency Probiotic and harmed ExeGi.

WHEREFORE, Plaintiff ExeGi Pharma, LLC demands judgment against Defendant Brookfield Pharmaceuticals, LLC, awarding Plaintiff all available remedies including: (1) compensatory damages in an amount to be proven at trial but in no event less than $5,000,000; (2) disgorgement of Brookfield's profits in an amount to be proven at trial but in no event less than $5,000,000; (3) a permanent injunction prohibiting Brookfield from making false statements regarding High Potency Probiotic or Visbiome; (4) attorneys' fees and costs; (5) prejudgment and post-judgment interest; and (6) such other, further, and general relief as to the Court deems just and proper.

## COUNT V
### (Tortious Interference with Prospective Contractual Relations)

112.    ExeGi adopts by reference each and every one of the foregoing factual allegations as if alleged in full in Count V, except as they may be inconsistent with the specific allegations contained in Count V.

113.    ExeGi has developed and maintained valuable and reliable contractual relationships with various retailers and distributors throughout the country.

29

114.     In addition, ExeGi has a prospective contractual relationship with McKesson.

115.     McKesson supplies Costco pharmacies throughout the nation, and various Costco pharmacies have clamored for Visbiome to prescribe for and distribute to their customers.

116.     Brookfield knows of the existence of this prospective contractual relationship, as it sells its High Potency Probiotic to McKesson.

117.     Brookfield has acted intentionally to disrupt ExeGi's prospective contractual relationship with McKesson by pushing its High Potency Probiotic in lieu of ExeGi's Visbiome.

118.     Specifically, Brookfield has evidenced its intent to interfere with ExeGi's prospective contractual relationship by knowingly and intentionally misrepresenting the characteristics and efficacy of its High Potency Probiotic product, and presenting it as a generic equivalent to, or suitable substitute for, ExeGi's Visbiome.

119.     Brookfield's statements and advertising were wrongful, tortious, and made without right, privilege, or justification.

120.     Brookfield's actions constitute tortious interference with ExeGi's legitimate prospective contractual relationship with McKesson.

121.     As a direct and proximate result of Brookfield's false and misleading statements, advertising, and other wrongful conduct alleged herein, ExeGi has suffered the actual loss of an advantageous economic relationship, as McKesson has refused to carry Visbiome.

WHEREFORE, Plaintiff ExeGi Pharma, LLC demands judgment against Defendant Brookfield Pharmaceuticals, LLC, awarding Plaintiff all available remedies including: (1) compensatory damages in an amount to be proven at trial but in no event less than $5,000,000 (2) disgorgement of Brookfield's profits in an amount to be proven at trial but in no event less than $5,000,000; (3) punitive damages in an amount to be proven at trial but in no event less than

$5,000,000; (4) attorneys' fees and costs; (5) prejudgment and post-judgment interest; and (6) such other, further, and general relief as to the Court deems just and proper.

## DEMAND FOR JURY TRIAL

ExeGi requests a jury trial of all issues properly triable by jury.

Respectfully submitted,

**HANSEN REYNOLDS LLC**

By: /s/ Thomas S. Reynolds, II
  Thomas S. Reynolds, II, SBN: 1036732
  James F. Cirincione, SBN: 1086061
  301 N. Broadway, Suite 400
  Milwaukee, Wisconsin 53202
  (414) 455-7676
  (414) 273-8476 (fax)
  treynolds@hansenreynolds.com
  jcirincione@hansenreynolds.com

**SCHULMAN BHATTACHARYA, LLC**

By:/s/ Jeremy W. Schulman
  Jeremy W. Schulman*
  Jeffrey S. Gavenman*
  James "Jake" Schaller*
  7500 Old Georgetown Road, Suite 901
  Bethesda, Maryland 20814
  (240) 356-8550
  jschulman@schulmanbh.com
  jgavenman@schulmanbh.com
  jschaller@schulmanbh.com

  *Attorneys for Plaintiff ExeGi Pharma, LLC*

  * applications for admission forthcoming

31