# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

EXEGI PHARMA, LLC,

                     Plaintiff,

v.

BROOKFIELD
PHARMACEUTICALS, LLC,

                  Defendant.

Case No. 20-CV-192-JPS

**ORDER**

On March 21, 2023, the Court granted in part and denied in part each of Plaintiff ExeGi Pharma, LLC's ("Plaintiff") partial motion for summary judgment and Defendant Brookfield Pharmaceuticals, LLC's ("Defendant") motion for summary judgment. ECF No. 101. In pertinent part, the Court concluded that

> [Defendant] is entitled to summary judgment in its favor that a determination of literal falsity of any "medical foods" claims is precluded by the [Food, Drug & Cosmetic Act], and accordingly any Lanham Act claim as to the "medical foods" representations is dismissed without prejudice; . . . [and] [Plaintiff] is entitled to summary judgment in its favor as to liability on its Lanham Act false advertising and common law unfair competition claims with regard to the "same probiotic bacteria," "same strains," and "generic equivalent" statements, and a permanent injunction will be entered accordingly by separate order[.]

*Id.* at 43. The same day, the Court entered a permanent injunction enjoining Defendant from "stating or suggesting in any communications directed at or readily accessible to" consumers or intermediaries that Defendant's High Potency Probiotic ("HPP") product is the "generic equivalent of," "contains

the same strains as," or "contains the same probiotic bacteria" as Plaintiff's Visbiome product. ECF No. 102. The injunction also included a provision ordering Defendant to send corrective letters to all consumers or intermediaries informing them of the same within fourteen days of entry of the injunction. *Id.*

Now before the Court are (1) Defendant's motion to stay the corrective letters portion of the permanent injunction pending Defendant's motion for reconsideration and appeal of the corrective letters portion of the permanent injunction, ECF No. 103; (2) Defendant's motion for reconsideration, ECF No. 106; and (3) Defendant's motion to dismiss any claim for "unfair competition" other than false advertising under 15 U.S.C. § 1125(a) (the "Lanham Act"), ECF No. 110. At this juncture, Defendant's motion to stay the corrective letters portion of the permanent injunction pending the motion for reconsideration is moot. Defendant has already filed the motion for reconsideration and has not sent any corrective letters in the interim. For this reason, and because the standard for a stay pending appeal requires consideration of likelihood of success on the merits, *see infra* p. 14—and the motion to stay raises the same legal challenges to the merits as the motion for reconsideration—the Court analyzes the motion for reconsideration first.

For the reasons set forth herein, the Court will deny Defendant's motion for reconsideration and motion to stay the corrective letters portion of the permanent injunction, but will grant Defendant's motion to dismiss.

## 1. DEFENDANT'S MOTION FOR RECONSIDERATION

Defendant moves for reconsideration under Federal Rule of Civil Procedure 59. ECF No. 106. The applicable provision, Rule 59(e), applies

only in limited circumstances. "Altering or amending a judgment under Rule 59(e) is permissible when there is newly discovered evidence or there has been a manifest error of law or of fact." *Harrington v. City of Chicago*, 433 F.3d 542, 546 (7th Cir. 2006). "A 'manifest error' is not demonstrated by the disappointment of the losing party." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). Nor is it a forum for "for rehashing previously rejected arguments." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1270 (7th Cir. 1996). Instead, "[i]t is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto*, 224 F.3d at 606 (quoting *Sedrak*, 987 F. Supp. at 1069).

Defendant raises three main challenges to the Court's March 21, 2023 order. First, Defendant contends that the Court erred by analyzing the literal falsity of Defendant's statements without considering the context in which the statements were made. ECF No. 107 at 6. Specifically, the "context" Defendant urges (and urged) the Court to consider in determining the literal falsity of its statements that HPP contains the "same" probiotic bacteria and the "same" strains as Visbiome—both in the instant motion for reconsideration and the underlying summary judgment briefing—is (1) that some (not all) of the strains in HPP and Visbiome are identical, (2) that species are colloquially called strains and HPP's label lists only species and not strains, and (3) that HPP contains "all the same genus" and "nearly the same species" as Visbiome. ECF No. 107 at 12; *see also* ECF No. 88 at 7–13 (Defendant's summary judgment opposition brief).

Second, Defendant argues that the Court erred by interpreting the term "generic equivalent" because that analysis is precluded by the Food, Drug & Cosmetic Act ("FDCA"). ECF No. 107 at 7. Finally, Defendant

asserts that the Court erred by taking the issue of materiality from the jury by "failing to take the facts most favorably to [Defendant]." *Id.* at 15. Other than the second argument, which Defendant did not raise at all on summary judgment, these arguments are inappropriate "rehashing" of previously raised arguments. *Caisse Nationale*, 90 F.3d at 1270.

Defendant's first, context-based argument hinges on the Court's reading of *Schering-Plough Healthcare Prods., Inc. v. Schwarz Pharma, Inc.*, 586 F.3d 500 (7th Cir. 2009). In that case, the plaintiff argued that the defendant's products' labels and package inserts were false because they "obscure[d] the existence of [the plaintiff's] over-the-counter equivalent" products. *Id.* at 505. The Seventh Circuit analyzed the statements at issue—for example the symbol "Rx only" on the defendant's products' label and the sentence "[p]olyethylene Glycol 3350 NF Powder for Oral Solution is a prescription only laxative which has been prescribed by your physician to treat constipation" on the defendant's products' package insert—by reference only to the label and package insert. *Id.* at 513 ("There is the manufacturer's name at the top, the name of the active ingredient, the symbol 'Rx only,' and some other information. Obviously this product, the product of the named manufacturer, is prescription only, but it is not obvious, as [the plaintiff] contends . . . that every other product containing polyethylene glycol 3350 is prescription only."). The Seventh Circuit concluded that the challenged statements were not literally false. *Id.* at 512. As to "the doctrine of 'literal falsity,'" the Seventh Circuit stated that

> "literal" must be understood in the common colloquial sense in which Americans . . . say things like "I am literally out of my mind." A "literal" falsehood is bald-faced, egregious, undeniable, over the top.

Case 2:20-cv-00192-JPS   Filed 07/05/23   Page 4 of 21   Document 114

We know this is what the cases are driving at because they add to "literal falsity" such qualifiers as that the meaning of the alleged literal falsehood *must be considered in context and with reference to the audience to which the statement is addressed* . . . . That is how one obtains an understanding of the real meaning of "2 + 2 = 5" in Soviet propaganda.

The proper domain of "literal falsity" as a doctrine that dispenses with proof that anyone was misled or likely to be misled is the patently false statement that means what it says to any linguistically competent person, unlike the examples we have given [such as the Soviet propaganda 2 + 2 = 5]. So suppose the labels on the defendants' products stated: "All polyethylene glycol 3350, by whomever made, can be sold only by prescription; there is no over-the-counter version of this drug." That would be false and misleading per se; *there would be no need to consider context or audience.*

*Id.* at 512–13 (emphases added) (citations omitted). Thus, with respect to the doctrine of literal falsity, the notion of "context" can come into play at two steps of the analysis.

First, a statement can be considered "in context and with reference to the audience to which the statement is addressed" in determining in the first instance whether the statement is literally false. *Id.* Context is considered at this stage when, within the umbrella doctrine of literal falsity, a statement is found to be "false by necessary implication." *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 383 n.3 (7th Cir. 2018). However, as the *Schering-Plough* court explains, and as the Court noted in its March 21, 2023 order, ECF No. 101 at 26–27, if, again within the umbrella doctrine of literal falsity, the statement is "false and misleading per se," considering context at this stage is not necessary. 586 F.3d at 513. *See also Eli Lilly & Co. v. Arla Foods Inc.*, No. 17-C-703, 2017 WL 4570547, at *9 (E.D. Wis. June 15, 2017) (finding statements "neither literally false nor literally false by necessary

implication" because, as to literal falsity per se, the statement on its face does not indicate that a supplement "is *actually* a monster with razor sharp horns and electric fur," and, as to literal falsity by necessary implication, "[p[lacing [the] statement in context" does not transform the claim into an actionable one); *accord Eli Lilly*, 893 F.3d at 382 ("The inquiry asks whether the defendant made an explicit representation of fact that *on its face* conflicts with reality.") (emphasis added).

Second, if the statement is not literally false, context may come into play a second time to determine whether a person is likely to be misled by the statement. *Schering-Plough*, 586 F.3d at 512–13.

In *Schering-Plough*, the Seventh Circuit explained that *if* the defendants' products labels had stated "[a]ll polyethylene glycol 3350, by whomever made, can be sold only by prescription; there is no over-the-counter version of this drug," *then* such a statement would be false and misleading per se, with no need to consider the statement in context and with reference to audience. 586 F.3d at 513. However, that was "not what the labels [said]," and so the court carried on and considered the statements within the context of the label and product insert themselves. *Id.* The Seventh Circuit notably did not consider any broader industry context of the sort that Defendant urged (and urges) the Court to consider at this step of the analysis, such as that industry players colloquially refer to "species" as "strains." *Id.*

The Seventh Circuit's consideration of only the label and product insert "context" is supported by the case law cited in the opinion. *Id.* (citing, e.g., *Avis Rent A Car Sys., Inc. v. Hertz Corp.*, 782 F.2d 381, 385–86 (2d Cir. 1986) ("The entire mosaic should be viewed rather than each tile separately.")). In turn, the *Avis* court cites *American Home Prod. Corp. v.*

*Abbott Lab'ys*, 522 F. Supp. 1035, 1040 (S.D.N.Y. 1981), where the court considered a medication's sales history to assess whether or not the medication was "new." *Id.* Again, this is not the "context" Defendant sought (and seeks) the Court to consider. As another court noted in response to a remarkably similar argument:

> Nonetheless, @properties claims that "sales" and "transactions" are understood in the real estate brokerage industry to refer "to the exchange of ownership interest and title of a parcel of real property from one person or entity to another person or entity." . . . . *This argument, however, is better suited to an implied falsity claim, where the inquiry focuses on "what does the person to whom the advertisement is addressed find to be the message?" Johnson & Johnson * Merck Consumer Pharm. Co. v. Smithkline Beecham Corp.*, 960 F.2d 294, 297 ([2d] Cir. 1992). It is not the domain of a literal falsity claim to evaluate the specialized understandings of consumers in a particular market; rather, *a literal falsity claim asks only how an advertisement would be understood by a "linguistically competent person." Schering-Plough*, 586 F.3d at 513.

*At World Properties, LLC v. Baird & Warner Real Est., Inc.*, No. 18-CV-01973, 2019 WL 4034636, at *5 (N.D. Ill. Aug. 27, 2019) (emphases added).

The Court concluded in this case that Defendant's statements that HPP contains the "same strains" and the "same probiotic bacteria" as Visbiome were false and misleading per se and thus did not need to be considered in context and with reference to audience. ECF No. 101 at 26–27; *accord Underground Sols., Inc. v. Palermo*, 188 F. Supp. 3d 717, 727–28 (N.D. Ill. 2016) (statements literally false as a factual matter where tests revealed "grossly exaggerated" scientific claims). However, at the end of the day, the differing readings of *Schering-Plough* are irrelevant, because the Court ***did*** consider the "context" that Defendant raises in its March 21, 2023 order, though it did not use the word "context."

Case 2:20-cv-00192-JPS    Filed 07/05/23    Page 7 of 21    Document 114

In its March 21, 2023 order, the Court considered both that some (but not all) of the strains in HPP and Visbiome are identical and that the products contain all the same genus and nearly the same species in determining the literal falsity of the statements. ECF No. 101 at 28 ("[The parties] do not dispute that HPP contains *several* strains that are of an entirely different genus and species than the strains in Visbiome. Indeed, as an undisputed fact, they submit verbatim that 'the products are not the same.'" (emphasis added)).[1] The Court too considered the fact that the parties do not dispute that different metabolic profiles—such as those present in HPP and Visbiome—can yield different benefits. *Id.* at 29 (citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 13–14 (7th Cir. 1992)).

---

[1]Defendant argues that the Court ignored evidence from Kevin Mehring ("Mehring") "who testified that some of the strains in HPP and Visbiome are actually identical." ECF No. 104 at 5; ECF No. 107 at 11. The Court disregarded Mehring as a challenged expert, ECF No. 101 at 2 n.2, but not as a corporate representative, *id.* at 11. Further, Mehring testified that it is "*probable* that HPP has some of the same strains as Visbiome," not that they are "*actually* identical." *Id.* at 11 (emphases added). The Court excerpted and considered this testimony, *id.*, and considered throughout its order—indeed hinged its opinion upon—the fact that the products have some of the same, but not the same, strains.

Frankly, the Court is perplexed and exhausted by Defendant's frequent mischaracterization of the evidence, including the "undisputed" evidence, the Court's language, and Plaintiff's arguments. The Court has neither the time, the interest, nor the resources to mine through each of the preceding documents, comparing where Defendant has manipulated, mischaracterized, or selectively excerpted language to support its version of events. But this is what the Court has had to do. Yet another example is where Defendant claims that the *Schering-Plough* court held that the meaning of literal falsehoods "must be considered in context," but neglected to cite the very next paragraph of the opinion noting the exception to the rule. ECF No. 107 at 6. As the Court has said many times before, obfuscation and gamesmanship have no place in the skill set of any practicing member of the bar.

The Court also considered, in the alternative, the fact that species are colloquially called strains, which could cause confusion given that HPP's label lists only species and not strains. Although the Court maintains that *Schering-Plough* counsels that this fact—essentially a reference to audience—is more appropriately considered as context related to whether anyone was misled, it nonetheless *did* consider this fact at summary judgment. *Cf. At World Properties, LLC*, 2019 WL 4034636, at *5 ("This argument, however, is better suited to an implied falsity claim, where the inquiry focuses on 'what does the person to whom the advertisement is addressed find to be the message?' rather than 'a literal falsity claim [which] asks only how an advertisement would be understood by a 'linguistically competent person.''"). The Court held that even with this fact in mind, the challenged statements are still literally false. ECF No. 101 at 29–30 ("Even if the Court were to be convinced that [Defendant] meant to say the 'same species' instead of the 'same strains,' that statement would still be literally false, as the parties do not dispute that HPP and Visbiome contain bacteria of different species.").[2]

Defendant further challenges the fact that the Court later held, as to Defendant's statements that HPP is a "generic equivalent" of Visbiome, that under those circumstances, unlike the word "same," "the showing of falsity is highly dependent on *the context in which the advertisements were viewed*,"

_____

[2] While the call center members and an executive of Defendant in one email, ECF No. 88 at 12, qualified the literally false statements with statements such as an "exact comparison" of the products is not possible, they nonetheless said—in the same script or the same email—the literally false statements, or statements that the products contain "the same probiotic bacteria in the same total potency per capsule," which literal falsity overcomes any qualifier to the contrary. ECF No. 101 at 11.

i.e., by scientific industry players. ECF No. 101 at 31 (emphasis added). However, the Court relied upon the case law cited by Defendant in its summary judgment briefing explaining that subjective perception was required to understand the meaning of the word "generic" because this word has "no meaning allowing an objective finding of literal falsity independent from that context," unlike the word "same." *Id.* (quoting *Steifel Labs. v. Brookstone Pharms., L.L.C.*, No. 08-CV-3773, 2012 WL 12888436, at *9 (N.D. Ga. July 24, 2012)). And even so, as explained above, the Court still considered, as to the word "same," an independent meaning of "same strains" based on colloquial industry knowledge.

With respect to "the context in which the advertisements were viewed," Defendant argues that the Court's evaluation of industry players' understanding of the "generic equivalent" term inappropriately treaded into the FDCA's regulatory forum. ECF No. 107 at 7–11. But Defendant never made this argument in its summary judgment briefing. Defendant argued that the context in which it referred to HPP as a "generic equivalent" of Visbiome was on a required form that it filled out "the best [it] could" and that this statement was not literally false because it was merely placing HPP in the same "product category" as Visbiome. ECF No. 101 at 34 (quoting ECF No. 88 at 16). "The parties' arguments—especially when both sides are represented by counsel—are precisely what frame a court's approach to an issue, and a court should be entitled to rely on what the parties argue in their briefs." *Studio & Partners, s.r.l. v. KI*, No. 06-C-0628, 2008 WL 426496, at * 11 (E.D. Wis. Feb. 14, 2008).

While Defendant did not make the regulatory argument in its summary judgment briefing, its argument that it filled out the form "the best [it] could" apprised the Court of—and the Court noted—Defendant's

position that the term "generic equivalent" applies only to drug products. ECF No. 101 at 34 ("Specifically, the form on its face applies only to prescription drug products, but nonetheless, [Defendant] was required to use the form to have its product listed with the drug compendia."). The Court also considered Defendant's executive's testimony that he did not believe it was accurate to refer to HPP as a "generic equivalent" to Visbiome. *Id.* If that is the case, or if the term did not apply to HPP, Defendant should not have used it. Indeed, as Plaintiff noted on summary judgment, on other areas of the applicable form, Defendant wrote "Not Applicable." ECF No. 105 at 13.

Further, Defendant seemingly has no issue with the Court's holding that the parties' industry players' competing definitions of "generic" sufficiently create an issue of fact for the jury, ECF No. 101 at 33–34, and does not contend that this holding, too, treaded into the FDCA's regulatory forum. The same industry players' opinions that the term "generic equivalent" applies only to drugs does not change the reasoning or conclusion in the Court's March 21, 2023 order. For all these reasons, the motion for reconsideration as to Defendant's first two arguments regarding literal falsity and FDCA preclusion will be denied.

The motion for reconsideration will also be denied as to Defendant's contention that the Court erred in its analysis of materiality. If the word "same" really meant "similar," "many of the same" or "some of the same," as Defendant would have it, Defendant is free to use *those* words and phrases, rather than "same," to describe the products to whomever it wishes. The Court's holding as to these statements was limited to the word "same," which the Court found unequivocally—and falsely in this instance—means "equivalent" or "identical." ECF No. 101 at 30. In the same

vein, if this difference were not material, as Plaintiff notes, ECF No. 109 at 10–11, Defendant would have no problem complying with the permanent injunction—and the same is true as to the "generic equivalent" statements.

Defendant's gripe with respect to materiality is that the Court analyzed capacity to influence choice rather than actual influence.[3] ECF No. 107 at 16; ECF No. 101 at 36 (quoting *e-ImageData Corp. v. Digit. Check Corp.*, No. 15-CV-658, 2018 WL 1411226, at *3 (E.D. Wis. Mar. 21, 2018) ("Yet, in assessing materiality in this context, courts generally only require a likely, as opposed to an actual, effect on consumer choice.")). But Defendant does not cite any authority stating this standard was incorrect, either now or in response to Plaintiff's briefing that cited this standard on summary judgment.[4] Instead, Defendant explains, again, that within the supply chain

---

[3]Defendant asserts that it also challenges the Court's findings as to injury, but does not make any substantive arguments regarding those findings. ECF No. 107 at 15. To the extent the issue of customer emails or customer calls to Defendant's call center are the basis of the injury challenge, the Court notes the following.

Defendant argues that the Court ignored expert statements that referring to HPP and Visbiome as having the "same strains" is "not material or likely to cause injury to the general public, much less clinicians." ECF No. 104 at 9 (citing ECF No. 71, ¶ 89). Paragraph 89 of ECF No. 71 is the portion of the parties' undisputed facts stating that "[m]ost of the public and some clinicians incorrectly refer to genus and species as 'strains.'" As noted, the Court considered this argument. Even so, as the Court will explain below, the applicable legal standard is "likely, as opposed to an actual, effect on consumer choice." *Infra* p. 12. The Court found likely effect, but also found actual effect based on customer emails stating the same. ECF No. 101 at 38. Defendant also asserts that there is "[e]vidence that there was no reason why McKesson could not have stocked Visbiome." ECF No. 104 (citing ECF No. 78-1 at 23–25). The email Defendant cites states that there is still an "issue [to] be resolved," and does not overcome the customer emails showing injury. ECF No. 78-1 at 23–25.

[4]In general, Defendant's motion for reconsideration is extremely light on legal authority and equally heavy on "bald, unsupported assertions." ECF No. 109 at 8.

for these products, drug compendia use the product label and the Food and Drug Administration Orange Book rating, wholesalers and retailers rely on the drug compendia systems and price, and end use consumers rely on price, availability, and preference. ECF No. 107 at 16–17.

The Court observed this sequence in its March 21, 2023 order and found that, even if the drug compendia did not rely on the form listing HPP as a "generic equivalent" to Visbiome, Defendant nonetheless had the goal in making that statement for the products to be placed in the same category—a determination that is material all the way through the supply chain. ECF No. 101 at 36–38 (citing Vincent N. Palladino, *Lanham Act "False Advertising" Claims: What Is A Plaintiff to Do?*, 101 Trademark Rep. 1601, 1626 (2011) (factors behind materiality include "how a misrepresentation is used," and "the extent to which a misrepresentation departs from the facts")); *id.* at 13–14 (Defendant's executive "testified that listing VSL #3 and Visbiome as products to which HPP is a 'generic equivalent' on the HDA form 'point[s]' recipients of the form 'in the right direction of what these products are similar to'") & 14–15 (applicable form was also sent to wholesalers). Indeed, whether drug compendia relied on the forms is a disputed fact, ECF No. 109 at 12 & ECF No. 101 at 12, but it was again taken as true (or viewed in the light most favorable to Defendant) for purposes of summary judgment. ECF No. 101 at 37, 39. For all these reasons, in addition to the reasoning set forth in the Court's March 21, 2023 order, Defendant's motion for reconsideration will be denied in its entirety.

2.     **DEFENDANT'S MOTION TO STAY THE CORRECTIVE LETTERS PORTION OF THE PERMANENT INJUNCTION PENDING APPEAL**

"The standard for granting a stay pending appeal mirrors that for granting a preliminary injunction." *In re A & F Enters., Inc. II*, 742 F.3d 763, 766 (7th Cir. 2014). "To determine whether to grant a stay, [courts] consider the moving party's likelihood of success on the merits, the irreparable harm that will result to each side if the stay is either granted or denied in error, and whether the public interest favors one side or the other." *Id.* The Court evaluated the same factors—except looked at success on the merits in lieu of likelihood of success on the merits—in granting Plaintiff's motion for permanent injunctive relief. ECF No. 101 at 41–43.[5]

Defendant contends in support of the first factor that it is "likely to succeed on the merits of obtaining appellate review." ECF No. 104 at 2. It is undisputed, however, that Defendant has the right to seek appellate review of the permanent injunction under Federal Rule of Appellate Procedure 8.

---

[5]The parties dispute whether Defendant's motion, filed under Federal Rule of Appellate Procedure 8, is procedurally appropriate. "Under Rule 62(c) of the Federal Rules of Civil Procedure, the district court may stay an injunction pending appeal. A Court of Appeals may grant such relief under Rule 8(a) of the Federal Rules of Appellate Procedure." *Hinrichs v. Bosma*, 410 F. Supp. 2d 745, 748 (S.D. Ind. 2006). Plaintiff is correct that Federal Rule of Civil Procedure 62, not Federal Rule of Appellate Procedure 8, is the appropriate mechanism before this Court. ECF No. 105 at 6. However, the Court will excuse the technical flaw.

Plaintiff also argues that the motion is not ripe because it was filed prior to a notice of appeal. *Id.* However, it appears that a motion to stay a permanent injunction may be filed before the notice of appeal. *See In re Kimball Hill, Inc.*, 630 B.R. 294, 299 (Bankr. N.D. Ill. 2021); *cf.* Fed. R. Civ. P. 62(b) advisory committee's note to 2018 amendment ("Under new subdivision (b), 'a party' may obtain a stay. For example, a party may wish to secure a stay pending disposition of post-judgment proceedings after expiration of the automatic stay, not yet knowing whether it will want to appeal.").

This is not the appropriate inquiry; the inquiry is the underlying merits of Defendant's arguments. *See In re A & F Enters., Inc. II*, 742 F.3d at 766. The Court already considered Defendant's challenges to the Court's prior holding on the merits and found those challenges to be unfounded. For those reasons and the reasons set forth in the Court's March 21, 2023 order, Defendant is unlikely to succeed on the merits.

Defendant argues that it will suffer irreparable harm if it is "forced" to send out corrective letters at this juncture, "as there is no way to unring a bell." ECF No. 104 at 2. Defendant further contends that Plaintiff will not be substantially injured because the subject communications are no longer ongoing. *Id.* at 3. Defendant supports this argument with a citation to the parties' undisputed facts on summary judgment where the parties detail challenged statements made several years ago. *Id.* (citing ECF No. 71 at 7).

As an initial matter, Defendant was aware of Plaintiff's request for injunctive relief in the form of corrective letters, but never raised these arguments before the Court on summary judgment. *Eli Lilly & Co. v. Arla Foods Inc.*, No. 17-C-703, 2017 WL 5244681, at *2 (E.D. Wis. July 18, 2017), *aff'd*, 893 F.3d 375 (7th Cir. 2018) (denying motion to stay (but granting to modification to confine injunction to the dispute), noting that "the form of the preliminary injunction was largely adopted from [the] proposed preliminary injunction order. [Defendant] did not object to the then-proposed terms of the injunction or claim that the proposed injunction would be overbroad").

On the merits, the Court does not see how Defendant would be harmed by sending corrective letters if it has stopped making the subject statements. In the Court's view, the corrective letters would have no effect if Defendant is no longer making these statements. To the extent they have

an effect, it would be to clear up confusion on customers' and intermediaries' part; if this confusion did not still exist to some degree, Defendant would not be concerned about sending the letters. Indeed, customer confusion is the public interest the Court sought to protect in granting Plaintiff's request for a permanent injunction. ECF No. 101 at 42–43 ("The Court finally determines that the public's interest will be served by eliminating customer confusion in the marketplace." (citing *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813–14 (7th Cir. 2002)).

As the Court noted above, Defendant is free to add the version of the statements it believes to be true—i.e., that the products have "some of the same" strains—within the corrective letters disavowing the statements it has already made, and which the Court has found to be literally false—i.e., that the products have the "same strains," "same probiotic bacteria," or are "generic equivalents." The fact that it does not want to do so only reiterates the Court's prior findings as to the balance of harms (and, parenthetically, the Court's determination that "same" means "same"). ECF No. 101 at 42 ("[T]he equities here are appropriately balanced. The injunction will address the Lanham Act violations the Court has adjudicated, while preserving HPP's presence in the market.").

Defendant is also concerned that if the permanent injunction is not stayed, the case will "progress on a dual track" given that Defendant will pursue an appeal of the corrective letters portion of the permanent injunction at the same time that the Court conducts a trial on damages and the remaining issues as to liability. ECF No. 104 at 4. Should Defendant elect

to appeal the corrective letters portion of the permanent injunction,[6] the Court will not hold a trial on damages or the remaining issues as to liability until the appeal is resolved. For that reason, the Court, with this Order, will also deny without prejudice Plaintiff's motion to strike Defendant's first supplemental and first amended supplemental expert disclosures, ECF No. 73. Should Defendant elect to appeal the corrective letters portion of the permanent injunction, it may be some time before trial occurs. At that time, Plaintiff may refile its motion to strike Defendant's first supplemental and first amended supplemental expert disclosures. Should Defendant elect not to appeal the corrective letters portion of the permanent injunction, the Court will set a trial schedule at the expiration of Defendant's prescribed time to appeal, and Plaintiff may then immediately refile the motion.

For all these reasons, the motion to stay will be denied; Defendant must comply forthwith with the permanent injunction it has so far neglected to follow. Plaintiff requests that the Court order Defendant to pay $500 to Plaintiff for each day it has not complied with the permanent injunction as a sanction. ECF No. 105 at 18. The Court will not order this relief at this juncture. However, should Defendant appeal the corrective letters portion of the permanent injunction, Plaintiff may move for a bond under Federal Rule of Appellate Procedure 8. Should Defendant not appeal the corrective letters portion of the permanent injunction, but continue to neglect to comply with its terms, the Court will entertain a renewed request of this nature. This is particularly so because the Court agrees with Plaintiff, ECF No. 105 at 2, that it is highly suspect that Defendant filed its motion to

---

[6]The Court summarily denies Defendant's request that the Court certify its March 21, 2023 order for interlocutory appeal. ECF No. 107 at 18.

stay on a non-emergency basis, did not post any sort of bond, and has seemingly made no progress towards drafting the corrective letters.

### 3. DEFENDANT'S MOTION TO DISMISS

In its March 21, 2023 order, the Court observed that

> [w]hile [Defendant] purports to move for summary judgment on all five of [Plaintiff's] claims, its briefing is devoid of any mention of even the elements of a Lanham Act unfair competition claim, or any application of the facts to those elements. [Defendant] appears to group the Lanham Act [false advertising and unfair competition] claims together, but never outright explains whether the analyses as to both claims, for example, rise and fall together. It is also telling that [Plaintiff] plainly moves only for summary judgment on the Lanham Act false advertising claim. Therefore, absent further explanation, the Court will deny [Defendant's] motion for summary judgment as to [Plaintiff's] Lanham Act unfair competition claim.

ECF No. 101 at 1 n.1. As a result, Defendant now moves to dismiss Plaintiff's Lanham Act unfair competition claim, ECF No. 110, which is Count II of Plaintiff's complaint, ECF No. 1 at 18.

The parties agree that "the Seventh Circuit has not weighed in specifically on the legal viability of a standalone unfair competition claim under the Lanham Act." ECF No. 112 at 7. Plaintiff argues that some courts have recognized the claim. *Id.* (citing *Healthpoint, Ltd. v. Allen Pharm., LLC*, No. SA-07-CA-0526-XR, 2008 WL 728333, at *1 (W.D. Tex. Mar. 18, 2008)). Further, Plaintiff notes that its Lanham Act unfair competition claim pleads allegations that its Lanham Act false advertising claim does not; for example, that Defendant has "sought to free ride off of [Plaintiff's] scientific development efforts" and harmed Plaintiff's goodwill in addition to the harm it has suffered from Defendant's false advertising. *Id.* at 9.

Case 2:20-cv-00192-JPS   Filed 07/05/23   Page 18 of 21   Document 114

That may be true, but at this stage of the litigation, where a jury trial and the preparation of jury instructions may be right around the corner, the Court declines to recognize a novel claim in this Circuit. Plaintiff pleads Defendant's efforts to free ride off of Plaintiff's scientific development as based on Defendant's "linking [of HPP] to Visbiome and marketing it as an equivalent and suitable alternative." ECF No. 1 at 22. These allegations may therefore be raised as to damages at trial.

For these reasons, the Court will permit the untimely motion to dismiss (indeed, the Court invited the issue in its March 21, 2023 order), construe the motion under Federal Rule of Civil Procedure 12(c), and dismiss without prejudice Plaintiff's Lanham Act unfair competition claim (Count II of Plaintiff's complaint). *Kishwaukee Cmty. Health Servs. Ctr. v. Hosp. Bldg. & Equip. Co.*, 638 F. Supp. 1492, 1494–95 (N.D. Ill. 1986) ("Defendants' motion to dismiss . . . is technically not a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), because defendants answered the first amended complaint prior to filing their motions . . . . Instead, it is a motion for judgment on the pleadings, see Fed. R. Civ. P. 12(c), which can be made at any time prior to trial, as long as the motion is not interposed merely for purposes of delay.") (citations omitted) (distinguished by *Riggins v. Walter*, 279 F.3d 422, 427–28 nn. 6–7 (7th Cir. 1995)).

The issues remaining for trial, therefore, are: (1) liability on Plaintiff's Lanham Act false advertising and common law unfair competition claims with regard to Defendant's statements that HPP is a "generic" of Visbiome; (2) liability on Plaintiff's common law tortious interference with contract claim; and (3) damages as to Plaintiff's Lanham Act false advertising and common law unfair competition claims with regard to Defendant's statements that Visbiome and HPP contain the "same probiotic bacteria,"

the "same strains," and are "generic equivalents," for which the Court found Defendant liable in its March 21, 2023 order.

### 4.    CONCLUSION

For the reasons set forth above, the Court denies Defendant's motion for reconsideration and motion to stay the corrective letters portion of the permanent injunction. ECF Nos. 105, 106. The Court grants Defendant's motion to dismiss, and will dismiss Plaintiff's Lanham Act unfair competition claim (Count II of Plaintiff's complaint) without prejudice. ECF No. 110. The Court will further deny without prejudice, to be refiled once a trial schedule is set, Plaintiff's motion to strike Defendant's first supplemental and first amended supplemental Rule 26 expert disclosures. ECF No. 73.

Accordingly,

**IT IS ORDERED** that Defendant Brookfield Pharmaceuticals, LLC's motion for reconsideration, ECF No. 106, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Brookfield Pharmaceuticals, LLC's motion to stay the corrective letters portion of the permanent injunction pending appeal, ECF No. 103, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Defendant Brookfield Pharmaceuticals, LLC's motion to dismiss, ECF No. 110, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Count II of Plaintiff ExeGi Pharma, LLC's complaint, ECF No. 1, which pleads unfair competition under the Lanham Act separate from false advertising under the Lanham Act, be and the same is hereby **DISMISSED without prejudice**; and

**IT IS FURTHER ORDERED** that Plaintiff ExeGi Pharma, LLC's motion to strike Defendant Brookfield Pharmaceuticals, LLC's first supplemental and first amended supplemental Rule 26 expert disclosures, ECF No. 73, be and the same is hereby **DENIED without prejudice**; Plaintiff ExeGi Pharma, LLC may **REFILE** the motion once the trial schedule is set.

Dated at Milwaukee, Wisconsin, this 5th day of July, 2023.

BY THE COURT:

_____

J.P. Stadtmueller
U.S. District Judge